IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division
In Admiralty

| | |
|---|---|
| NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY,<br><br>    Plaintiff,<br><br>and<br><br>EVANSTON INSURANCE COMPANY,<br><br>    Intervening Plaintiff,<br><br>v.<br><br>M/T MACKENZIE ROSE, her cargo, engines, boilers, tackle, equipment, apparel, and appurtenances, etc., *in rem*,<br><br>and<br><br>COEYMANS MARINE TOWING, LLC, *in personam*,<br><br>and<br><br>CARVER MARINE TOWING, LLC, *in personam*,<br><br>    Defendants. | Civil Action 2:24-cv-00407 |

## VERIFIED INTERVENING COMPLAINT

COMES NOW the Intervening Plaintiff, Evanston Insurance Company, by and through undersigned counsel, and alleges and says the following:

## PARTIES

1. Intervening Plaintiff, Evanston Insurance Company ("Evanston"), is a corporation approved as an insurer in the Commonwealth of Virginia with a principal place of business in a

State/Commonwealth other than Virginia.  Evanston provided insurance coverage to Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line") against losses arising from certain hazards to its real and business property.  This insurance was provided and issued under Evanston policy number RRP1549-11 (the "Policy").

2. At all times relevant hereto, the Belt Line was and is a railroad company organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business in Chesapeake Virginia.

3. Upon information and belief, M/T MACKENZIE ROSE (IMO No. 8968756) is a U.S. Flagged steel hull tugboat, approximately 96.4 feet in length.  The M/T MACKENZIE ROSE is subject to jurisdiction in this Court because it carried out business and caused damage in the Commonwealth of Virginia.

4. At all times relevant hereto, Coeymans Marine Towing, LLC ("CMT") was and is a limited liability company organized under the laws of New York, with its principal place of business in Coeymans, New York.  Upon information and belief, CMT owned, operated, managed, chartered, and/or controlled the M/T MACKENZIE ROSE.

5. At all times relevant hereto, Carver Marine Towing, LLC ("Carver") was and is a limited liability company organized under the laws of New York, with its principal place of business in Coeymans, New York.  Upon information and belief, Carver is the parent company or affiliate of CMT and operated, managed, chartered, and/or controlled the M/T MACKENZIE ROSE.

**JURISDICTION AND VENUE**

6. This is a case of admiralty and maritime jurisdiction arising out of a vessel allision with a railroad bridge.  This is also an admiralty or maritime claim within the meaning of Rule

9(h) of the Federal Rules of Civil Procedure and Rule C of the Supplemental Admiralty Rules. This Court has original admiralty jurisdiction pursuant to 28 U.S.C. § 1331.  Alternatively, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

7. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

8. The Belt Line is the owner of the Norfolk and Portsmouth Belt Line Railroad Company Main Line Railroad Bridge (the "Bridge"), which crosses the Southern Branch of the Elizabeth River between the cities of Chesapeake and Portsmouth, Virginia.  The Bridge is a single-track railroad vertical lift bridge and remains in the open position such that vessel traffic may pass underneath it, except when lowered to allow trains to pass. *See* 33 C.F.R. § 117.997.

9. On or about June 15, 2024, the M/T MACKENZIE ROSE was transitioning north on the Southern Branch of the Elizabeth River in the vicinity of the Bridge upon the navigable waters of the United States.  The M/T MACKENZIE ROSE was pushing ahead a 200-foot unmanned deck barge owned by Weeks Marine named WEEKS 281.

10. While approaching the Bridge, the M/T MACKENZIE ROSE made up in, pushing gear to the barge WEEKS 281, negligently and recklessly deviated outside the navigational channel underneath the lift section of the Bridge, causing the flotilla to allide with the western section of the Bridge (the "Allision").

11. At the time of the Allision, the Bridge was in the open position and did not impede or otherwise restrict access to the navigational channel underneath the lift section.

12. Upon information and belief, the M/T MACKENZIE ROSE and/or those in charge of her, including CMT and Carver, failed to navigate and operate with due regard for prevailing circumstances; failed to properly direct the movements of the M/T MACKENZIE ROSE so as to

prevent the Allision; failed to use all available means appropriate to the prevailing circumstances and conditions to determine if risk of allision existed; failed to make proper use of equipment to assess the risk of allusion and failed to avoid the Bridge; used an AutoPilot system known to be defective; failed to keep and maintain an alert and efficient lookout; misjudged the distance between the M/T MACKENZIE ROSE and the Bridge during approach; navigated too closely to the Bridge; failed to keep the M/T MACKENZIE ROSE under control so as to be able to stop the flotilla from striking the Bridge; failed to take into consideration the effects of the times, currents or wind; proceeded at an excessive rate or speed under the circumstances; and failed to take timely or effective steps to avoid striking the fendering system and Bridge.

13. Upon information and belief, the M/T MACKENZIE ROSE and those in charge of her, including CMT and Carver, negligently and recklessly failed to alert or notify the local Coast Guard and the Belt Line of the Allision before departing as required by 46 C.F.R. § 4.05-1, thereby preventing prompt investigation and timely drug/alcohol testing of the crew.

14. CMT and Carver, as owners and operator of the M/T MACKENZIE ROSE, are vicariously liable for the damage caused by the M/T MACKENZIE ROSE and those in charge of the M/T MACKENZIE ROSE as a result of the Allision, and the M/T MACKENZIE ROSE in liable *in rem*.

15. The Allision was not due to any fault of neglect on the part of the Belt Line, its agents, servants, or employees, and was not due to any fault or defect in the Bridge.

16. As a result of the Allision, the Bridge was severely damaged, rendering it unfit for train service.

17. Pursuant to its policy of insurance with the Belt Line, Evanston reimbursed the Belt Line in an amount of $5,000,000.00 for a portion of the damages incurred by the Belt line as a result of the incident described above, with additional payments anticipated.

18. By virtue of its payment, Intervening Plaintiff is subrogated to the Belt Line's right of recovery against any third-party for damages arising out of the June 15, 2024 incident.

WHEREFORE, Intervening Plaintiff prays the Court:

1. That judgment be rendered for Intervening Plaintiff and against the Defendants for an amount in excess of $5,000,000.00, costs of this litigation, including attorney's fee, and prejudgment interest, and all other damages as may be proved at trial or which justice requires;

2. For such other and further relief as this Court deems just and proper.

Respectfully submitted this 25th day of September, 2024.

BUTLER WEIHMULLER KATZ CRAIG LLP

s/ Zachary M. Jett, Esq.
Zachary M. Jett, Esq.
VA Bar No.: 93285
11525 N. Community House Road, Suite 300
Charlotte, North Carolina  28277
Telephone: (704) 543-2321
Facsimile:  (704) 543-2324
Email: zjett@butler.legal
*Attorney for Plaintiff*

## **VERIFICATION**

PERSONALLY APPEARED Vivian Conley, who, under penalty of perjury, deposes and says:

1. My name is Vivian Conley and I am an Executive Subrogation Specialist on behalf of Evanston Insurance Company in the instant action. I am over the age of 18, of sound mind, and a resident of Fulton County in Georgia.

2. I have read the forgoing VERIFIED INTERVENING COMPLAINT and know the contents therefore, and the same are true and correct to the best of my knowledge, except as to the matters therein stated to be on information and belief, and as to those matters, I believe them to be true.

3. I have specific knowledge as to the amounts paid by Evanston Insurance Company to its insured, Norfolk and Portsmouth Belt Line Railroad Company, under its policy of insurance, with said amount being $5,000,000.00. It is anticipated that additional payments will be made under its policy of insurance.

4. The sources of my information and the grounds of my belief are my personal knowledge and the documents in my possession.

5. The above statements are true and correct under penalty of perjury.


Evanston Insurance Company

_____
Vivian Conley
Executive Subrogation Specialist

Sept. 5, 2024
Date

**CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of September, 2024, the foregoing *Intervening Complaint* was filed electronically through the Court's CM/ECF electronic filing system, which will automatically deliver electronic notification of the same to the following counsel of record:

>James L. Chapman IV, Esq.
>W. Ryan Snow, Esq.
>Alexander R. McDaniel, Esq.
>Crenshaw, Ware & Martin, P.L.C.
>150 W. Main Street, Suite 1923
>Norfolk, Virginia  23510
>P: 757-623-3000
>F: 757-623-5735
>jchapman@cwm-law.com
>wrsnow@cwm-law.com
>amcdaniel@cwm-law.com
>*Attorneys for Plaintiff Norfolk and Portsmouth Belt Line Railroad Company*

>                s/ Zachary M. Jett
>                Zachary M. Jett, Esq.